UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TZIPPORA MILLER,

     Plaintiff,

  -against-

KELLY KOHLBRENNER; ROCKLAND
HOSPITAL GUILD INC.,

     Defendants.

26-CV-1457 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973 ("RA"). Named as Defendants are the Rockland Hospital Guild Inc. and its Director of Supportive Housing, Kelly Kohlbrenner. By order dated February 20, 2026, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. By order dated February 25, 2026, Chief Judge Laura Taylor Swain denied Plaintiff's request for a preliminary injunction and temporary restraining order. (ECF 9.) For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead her claims in an amended complaint.

### STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff bring this action against the Rockland Hospital Guild Inc., which she alleges is a "nonprofit entity engaged in providing supportive housing services" and that receives public funding, and Kelly Kohlbrenner, Rockland Hospital Guild's Director of Supportive Housing, whom Plaintiff describes as "an individual who acted as a care coordinator or agent through state-funded housing-related program for individuals with disabilities and exercised authority and influence over Plaintiff's medical care." (ECF 1, at 2.) The following facts are drawn from

2

the complaint.[1] Plaintiff has "serious medical conditions requiring ongoing medical care, including monitoring and treatment for dangerously elevated blood pressure, respiratory issues, and other medical emergencies." (*Id.*) She was previously enrolled in a "housing-related program," presumably with Rockland Hospital Guild, that "required [her] to sign authorizations allowing coordination or involvement in medical care." (*Id.*) As of January 2026, Plaintiff is no longer enrolled in that program and "did not consent to [its] continued involvement" in her medical care. (*Id.*)

Despite Plaintiff's disenrollment from the program, Defendants continued to "interfere" in Plaintiff's medical care by "contacting doctors, hospitals, and medical providers, making representations on Plaintiff's behalf, and influencing medical decision-making." (*Id.*) Specifically, Plaintiff alleges that Defendants have "characterized Plaintiff'[s] medical conditions as psychiatric in nature and have directed or influenced medical providers to pursue psychiatric placement instead of medical treatment, including emergency room records reflecting psychiatric mischaracterization of a medical complaint." (*Id.* at 2-3.) As an example of Defendants' "involvement and interference" with her medical care, Plaintiff alleges that she has experienced "repeated instances in which vital signs and diagnostic testing, including blood pressure measurements and other medical assessments, were recorded or relied upon in a manner inconsistent with Plaintiff's prior objective findings," and, therefore, according to Plaintiff, resulted in "medically necessary treatment" being delayed, limited or denied. (*Id.* at 4.)

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

Plaintiff maintains that she is "subject to a valid New York State court order prohibiting interference with [her] access to medical care," but "Defendants' conduct occurred despite the existence of the state court order."[2] (*Id.* at 3.)

In addition to interfering with Plaintiff's medical care, Defendants "engaged in a pattern of harassment and surveillance directed at Plaintiff, including repeated unwanted contact, tracking or monitoring of Plaintiff's phone and vehicle, and actions that interfered with Plaintiff's business and livelihood." (*Id.*) She further alleges "upon information and belief" that Defendants communicated with members of her family without her consent. (*Id.*)

Plaintiff seeks injunctive relief, including an order that, among other things, enjoins Defendants from "direct[ly] or indirect[ly]" interfering with Plaintiff's medical care; communicating with or "influenc[ing]" any medical provider with respect to Plaintiff; and recommending "psychiatric evaluation, placement, or confinement in lieu of medical treatment." (*Id.* at 6.) Plaintiff also seeks an order granting her "emergency medical care as indicated is necessary verbally by medical providers." (*Id.*)

## DISCUSSION

### A.    Claims under 42 U.S.C. § 1983

Plaintiff brings claims under 42 U.S.C. § 1983 that Defendants violated her right to due process under the Fourteenth Amendment. A claim for relief under Section 1983 must allege

---

[2] Plaintiff states that she attaches a copy of that court order as an exhibit to her request for preliminary injunctive relief. The referenced document is a February 11, 2026 order to show cause issued by Judge Larry J. Schwartz of the Supreme Court of the State of New York, Rockland County, directing Rockland Hospital Guild to show cause at a February 27, 2026 hearing why Plaintiff's proposed temporary restraining order prohibiting it from interfering with her care should not be granted. (ECF 4-2, at 1-2.) That order includes language temporarily restraining Rockland Hospital Guild and its associates from interfering with Plaintiff's medical care pending determination of the motion. (*Id.* at 2.) The documents submitted by Plaintiff do not indicate whether the court granted her temporary restraining order.

facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Here, Defendant Rockland Hospital Guild is a private nonprofit organization and Defendant Kohlbrenner is a private individual employed by Rockland Hospital Guild. Plaintiff does not allege that either defendant works for any state or other governmental body. Plaintiff instead argues that Defendants are state actors because they receive government funding. (*See* ECF 1, at 2.) Although there are limited circumstances in which a nominally private actor can be deemed a state actor for Section 1983 purposes, it is well established that receipt of government funding, "no matter how extensive, is insufficient to transform otherwise private conduct into state action." *Young v. Halle Hous. Assoc., L.P.*, 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001); *see, e.g.*, *Aponte v. Diego Beekman M.H.A. HFDC*, No. 16-CV-8479 (JPO), 2019 WL 316003, at *12 (S.D.N.Y. Jan. 24, 2019) (dismissing Section 1983 claims based on "entwinement" theory where plaintiffs alleged that landlord "receive[d] public funds and tax exemptions in exchange for providing low-income housing," and holding that entities do not become state actors "simply because those entities receive state funding for providing a public service" (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982))).

Because Defendants are private parties who do not work for a state or government body, and do not qualify as state actors, Plaintiff has not stated a Section 1983 claim against them. The

Court therefore dismisses Plaintiff's Section 1983 claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.      Claims under the ADA and RA**

Plaintiff asserts claims of disability discrimination under Title II of the ADA, which prohibits discrimination by public entities, and the RA. Because Defendants are not state or local governments, Plaintiff's ADA claims do not arise under Title II. The Court will construe Plaintiff's ADA claims as arising under Title III, which governs public accommodations, a term that includes "social service center establishment[s]. 42 U.S.C. § 12181(7)(K). The Court assumes for the purposes of this order, without deciding, that Defendant Rockland Hospital Guild is a public accommodation covered by Title III.[3] *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77 ("The phrase 'public accommodation' . . . 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." (footnotes omitted)).

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the RA, "no otherwise qualified

---

[3] Individual defendants, such as Kohlbrenner, cannot be held liable under the RA. *See, e.g.*, *Davis v. Power of Auth.*, No. 19-CV-0792 (KMK), 2022 WL 309200, at \*20 (S.D.N.Y. Feb. 2, 2022) (noting that there is no individual liability under the Rehabilitation Act). As to individual liability under Title III of the ADA, courts have focused "the inquiry . . . on the issue of control, *i.e.*, whether the named defendant 'operates' a place of public accommodation within the meaning of the ADA" and "'[t]he term operate has been interpreted as being in a position of authority and having the power and discretion to perform potentially discriminatory acts.'" *Bowen v. Rubin*, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005) (quoting *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999)). The Court declines to decide, at this stage, whether Kohlbrenner is subject to liability under the ADA.

individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The substantive standards for claims under the ADA and the RA are substantially the same, *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016), although a claim under the RA must be supported by allegations that the benefit is part of a "program or activity receiving Federal financial assistance," *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (internal quotation marks and citation omitted).

To state a claim under either of these statutes, a plaintiff must allege facts showing that (1) she is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) she was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of her disability. *See Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012) (Title III of the ADA); *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009) (RA). Under the ADA and RA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C) (ADA); 29 U.S.C. § 705(20)(B) (RA incorporating by reference the ADA's definition).

The Second Circuit has repeatedly held that, where the plaintiff challenges "the substance of the services provided" rather than "illegal discrimination," there is no violation of the federal disability statutes. *Doe*, 148 F.3d at 84 (rejecting ADA and RA challenge to adequacy of services for disabled individuals through the New York Office of Vocational Educational Services for Individuals with Disabilities); *see e.g., Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir.

2017) (summary order) (rejecting the assertion by detainee that "denial of timely and meaningful medical treatment for his [broken] nose constituted a failure to provide a 'reasonable accommodation'"); *Cushing v. Moore*, 970 F.2d 1103, 1109 (2d Cir. 1992) (holding that the RA "does not create a cause of action based on a [disability] that is directly related to providing the very services at issue"); *United States v. Univ. Hosp.*, 729 F.2d 144, 156 (2d Cir. 1984) (explaining that "where medical treatment is at issue, it is typically the [disability] itself that gives rise to, or at least contributes to, the need for services," and thus holding that the Rehabilitation Act "prohibits discrimination against a [disabled] individual only where the individual's [disability] is unrelated to, and thus improper to consideration of, the services in question").

Here, Plaintiff fails to state a claim under the ADA or RA. Plaintiff does not allege sufficient facts to suggest that she has a disability as defined by the ADA and RA. Although she alleges that she has "serious medical conditions" that include "dangerously elevated blood pressure, respiratory issues, and other medical emergencies" (ECF 1, at 2), she alleges no facts describing how her medical condition substantially limits one or more major life activities. Even if the Court assumes that Plaintiff has a disability as defined by the statutes, she does not allege facts suggesting that she was denied Defendants' services or otherwise discriminated against with respect to Defendants' services because of her disability. According to the complaint, Defendants' allegedly discriminatory actions began *after* Plaintiff was no longer enrolled in its program. (*See id.*) It is therefore unclear that Plaintiff was denied or unable to fully participate in Defendants' services.

Plaintiff's allegations regarding discrimination do not suggest a violation of the ADA or RA. Plaintiff appears to allege that Defendants took actions to discriminate against her with

respect to medical services she received through non-party medical providers. Specifically, Plaintiff alleges that Defendants interfered in her medical care by speaking with her family and medical providers and "mischaracterizing medical conditions as psychiatric." (*Id.* at 5.) As a preliminary matter, it is unclear from the complaint how Defendants—who are not medical providers—were able to influence or override the judgment of the medical professionals providing care to Plaintiff. In any event, even if the Court assumes that Defendants' actions impacted the type of care Plaintiff received from medical providers—*i.e.*, that she was provided "psychiatric" care rather than "medical" care—these allegations do not amount to discrimination under the ADA and RA. Rather, Plaintiff appears to be challenging only the substance of services provided. *See Doe*, 148 F.3d at 84.

Because Plaintiff does not allege facts suggesting that Defendants discriminated against her based on a disability, the Court dismisses her claims under the ADA and RA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead her ADA and RA claims in an amended complaint alleging facts showing that Defendants discriminated against her with respect to their services based on a disability as defined by the ADA and RA.

**C.      Claims under state law**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New*

*York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D.      Permission for electronic filing**

Plaintiff has filed a request to participate in electronic case filing in this action. (ECF 7.) The Court grants Plaintiff's request. The ECF Rules & Instructions are available online at https://nysd.uscourts.gov/rules/ecf-related-instructions.

Following Plaintiff's registering to file documents electronically, she no longer will receive service of documents by postal mail, whether or not she previously consented to accept electronic service. All documents filed by the court, or any other party, shall be served on Plaintiff by electronic notice to Plaintiff's designated email address. *See* Fed. R. Civ. P. 5(B)(2)(E).

Should Plaintiff have any questions regarding electronic filing, she may call the ECF Help Desk at (212) 805-0800.

**LEAVE TO AMEND GRANTED**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege

additional facts to state a valid claim under the ADA and RA, the Court grants Plaintiff 30 days' leave to amend her complaint to cure the deficiencies identified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

### CONCLUSION

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court grants Plaintiff's request to participate in electronic case filing in this action. (ECF 7.)

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   May 18, 2026
            New York, New York

_Louis L. Stanton_
Louis L. Stanton
U.S.D.J.

11